# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAMELA TAGLIERI EVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 18-10264-FDS |
| v. | ) | |
| | ) | |
| HSBC BANK USA, N.A., and | ) | |
| OCWEN LOAN SERVICING LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SAYLOR, J.

This is an action arising out of an attempted mortgage foreclosure. Plaintiff Pamela Taglieri Everton filed this suit against her mortgage lender, defendant HSBC Bank USA, N.A., and its mortgage servicer, defendant Ocwen Loan Servicing LLC. Everton defaulted on her mortgage in 2009. Ocwen allegedly offered her a private loan modification, which she accepted. The amended complaint alleges that Ocwen reneged on its initial offer and coerced her into accepting a second loan modification. Everton was unable to keep up with the increased mortgage payments and Ocwen, on behalf of HSBC, initiated foreclosure. The amended complaint asserts three claims: (1) violation of Mass. Gen. Laws ch. 93, §§ 49, 12 by HSBC; (2) violation of Mass. Gen. Laws ch. 93A by HSBC and Ocwen; and (3) failure to satisfy the provisions of Mass. Gen. Laws ch. 244, § 35B by HSBC.

HSBC and Ocwen have moved to dismiss all three counts of the amended complaint. Specifically, HSBC and Ocwen contend that Counts One and Two should be dismissed because they are barred by the relevant statutes of limitations and the statute of frauds. They further

contend that Count Three should be dismissed for failure to state a claim upon which relief can be granted.

For the following reasons, the motion will be granted.

## I. Background

Unless otherwise noted, the following facts are drawn from the amended complaint, documents referred to in the amended complaint, and accompanying exhibits.

### A. Factual Background

Pamela Taglieri Everton resides at 13 Bruno Street, Revere, Massachusetts. (Amend. Compl.¶ 5). The deed to the property covers two parcels of land. (*Id.* ¶ 7). One parcel is registered with the Massachusetts Land Court, and the other is recorded in the Suffolk County Registry of Deeds. (*Id.* ¶7).

On April 5, 2006, Everton and three of her family members executed a note and granted a mortgage on the property to the original lender, Delta Funding Corporation, in the amount of $280,011.94. (*Id.* ¶¶ 5-6). Delta subsequently assigned the mortgage to HSBC. (*Id.* ¶ 8). At all relevant times, Ocwen has serviced the mortgage for HSBC. (*Id.* ¶ 9). The mortgage and the subsequent assignment were both recorded in the Registry of Deeds and registered with the Land Court. (*Id.* ¶¶ 7-8).

In 2009, Everton defaulted on the mortgage. (*Id.* ¶ 10). On August 11, 2009, Everton received a loan modification offer from Ocwen that would reduce her principal balance to $77,494.26, and the interest rate to 3.95%, for the next five years, after which the rate would be calculated according to the terms of the original loan. (*Id.* ¶ 12; Ex. 1). It appears that the amount of the principal balance set forth in the offer was a mistake, in light of the huge discrepancy between that amount and the then-existing actual balance.

In order to "take advantage of" Ocwen's loan-modification offer, Everton was required to

make an initial payment of $662.31 and return the signed loan-modification agreement to Ocwen by August 31, 2009. (*Id.* ¶ 13; Ex. 1). Everton timely made the required payment and returned the signed agreement to accept the offer. (*Id*. ¶ 14; Ex. 2).

On September 14, 2009, Ocwen called Everton and told her that it had sent her a new loan-modification agreement that increased her principal balance to $279,759.59 and her monthly payment from $662.31 to $1,417.88. (*Id.* ¶ 15; Ex. 3). After Everton stated that she did not want to accept the modification, Ocwen "warned her that if she did not accept the new offer, her mortgage would be declared in default" and "Ocwen would then initiate foreclosure of the home." (*Id.* ¶¶ 16-17). Feeling "intimidated and threatened," Everton "capitulated" and signed the new loan-modification agreement. (*Id.* ¶¶ 17-18; Ex. 3).

Everton continues to receive monthly mortgage statements from Ocwen reflecting the increased balance under the September 2009 modification agreement. (*Id.* ¶ 19). At some point, Ocwen initiated foreclosure proceedings on behalf of HSBC. (*Id.* ¶ 22).

The foreclosure was scheduled for January 31, 2018. (*Id.* ¶ 25; Ex. 5). However, Everton obtained a preliminary injunction in Suffolk Superior Court restraining the foreclosure prior to the removal of this case to federal court. (*Id.* ¶¶ 26-27).

### B. Procedural Background

Everton filed suit in state court on January 19, 2018. HSBC and Ocwen removed the proceeding to federal court on February 9, 2018.

HSBC and Ocwen have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II. Legal Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

Defendants have moved to dismiss all three counts of the amended complaint. They contend that Counts One and Two should be dismissed because they are barred by the relevant statutes of limitations and statute of frauds. They further contend that Count Three should be dismissed for failure to state a claim because HSBC complied with the provisions of Mass. Gen. Laws ch. 244, § 35B.

Plaintiff contends that the limitations periods for Counts One and Two have not expired because defendants continue to send mortgage statements with an allegedly incorrect amount due, rendering each new statement a new violation of the Massachusetts Debt Collection Practices Act. She further contends the statute of frauds is inapplicable because Ocwen's August 2009 loan-modification offer was capable of being accepted by her performance. Finally, with respect to Count Three, she disputes that defendants satisfied the requirements of ch. 244, § 35B.

A. **Counts One and Two**

1. **Statute of Limitations**

Counts One and Two allege claims under the Massachusetts Fair Debt Collection Practices Act, Mass. Gen. Laws ch. 93, §§ 49 and 12, and Mass. Gen. Laws ch. 93A, respectively. The limitations period for claims arising under Massachusetts consumer protection laws is four years. Mass. Gen. Laws ch. 260, § 5A. Such claims accrue "when plaintiff knows or reasonably should have known of the harm attributable to defendant's conduct." *Paterson-Leich Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 994 (1st Cir. 1988).

Plaintiff here should have been on notice that she was harmed by defendants' allegedly unfair and deceptive practices no later than September 2009. By that point, even accepting her version of events as true, Ocwen had repudiated the August 2009 loan modification offer and she had been allegedly coerced into signing a new loan-modification agreement with less-favorable terms. The amended complaint does not allege that she learned any new facts after September 2009 that would toll the limitations period.

Plaintiff's reliance on a "continuing violation" theory to trigger a new accrual date for the statute of limitations is misplaced. Some courts have applied the doctrine to toll the limitations period for consumer-protection claims where there is a pattern of wrongful conduct or when each separate collection letter may be considered a discrete act constituting a separate violation of the FDCPA. *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 46 (D. Mass. 2012), *amended in part*, 969 F. Supp. 2d 74 (D. Mass. 2013), *aff'd in part*, *rev'd in part and remanded*, 775 F.3d 109 (1st Cir. 2014) (internal citation omitted)*; see, e.g.*, *Devlin v. Law Offices Howard Lee Schiff, P.C.*, 2012 WL 4469139, at *7 (D. Mass. Sept. 25, 2012); *Simard v. LVNV Funding, LLC*, 2011 U.S. Dist. LEXIS 111330, at *5 (D. Mass. Sep. 27, 2011) ("Typically, a continuing violation theory applies where a debt collection suit was not initiated

5

but the debt collector engaged in a series of harassing communications."). In applying the doctrine, however, it is said that "courts must be careful to differentiate between [unlawful] acts and the ongoing injuries which are the natural, if bitter, fruit of such acts." *Gilbert v. City of Cambridge*, 932 F.2d 51, 58 (1st Cir. 1991). "A defendant's subsequent act only renews the statute of limitations as to time-barred claims if that act is itself unlawful." *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 272 (D. Mass. 2017) (citing *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 7 (1st Cir. 2005)).

While "each new communication from a debt collector is viewed as a separate violation and a new statute of limitations period accrues[,] . . . if the new communication concerns an old claim, the new communication is subject to the statute of limitations period for the old claim." *Simard v. LVNV Funding, LLC*, 2011 WL 4543956, at *5 (D. Mass. Sept. 28, 2011). Plaintiff characterizes the continued mortgage statements she received from defendants as "new claims related to misrepresentation of the amounts due." (Pl.'s Sur-Reply to Mot. to Dismiss at 5-6). Under plaintiff's theory, each mortgage statement containing the disputed principal balance "constituted a new violation" because it was "incorrect correspondence" that "provide[d] misleading information." (*Id.* at 5). That theory, however, is misplaced. The mortgage statements containing the disputed principal balance were new communications concerning an old claim—that is, the September 2009 loan modification—not new claims or separate violations. *See Simard*, 2011 WL 4543956, at *5. The mortgage statements were "ongoing injuries which [were] the natural, if bitter, fruit" of an allegedly unlawful act, the September 2009 repudiation, not discrete acts that are themselves unlawful. *See Monteferrante*, 241 F. Supp. 3d at 272; *Gilbert*, 932 F.2d at 58.

Because plaintiff's claim accrued in September 2009, when she was notified of Ocwen's

repudiation of the August 2009 modification offer, the four-year limitations period expired well before she filed her complaint in 2018. Accordingly, Counts One and Two will be dismissed as barred by the statute of limitations.

### 2. Statute of Frauds

Because the Court finds Counts One and Two to be barred by the statute of limitations, it is not necessary to reach the issue of whether the August 2009 loan modification agreement falls within the statute of frauds.

### B. Count Three

Count Three alleges that the foreclosure is prohibited because of HSBC's failure to comply with the provisions of Mass. Gen. Laws ch. 244, § 35B. Defendants contend HSBC did comply with the required formalities and have accordingly moved to dismiss Count Three for failure to state a claim.

Mass. Gen. Laws ch. 244, § 35B(f) provides: "Prior to publishing a notice of a foreclosure sale, as required by section 14, the creditor, or if the creditor is not a natural person, an officer or duly authorized agent of the creditor, shall certify compliance with this section in an affidavit based upon a review of the creditor's business records. The creditor, or an officer or duly authorized agent of the creditor, shall record this affidavit with the registry of deeds for the county or district where the land lies." This provision has been read together with Mass. Gen. Laws ch. 188, §4 (recording requirements for deeds) and Mass. Gen. Laws ch. 188, § 32 ("The law relative to the acknowledgment and recording of deeds shall apply to letters of attorney for the conveyance of real estate.") to require that the § 35B affiant, if acting under a power of attorney, also record that power of attorney in the county Registry of Deeds. *See, e.g.*, *Weiner v. Rushmore Loan Mgmt. Servs., LLC*, 2018 WL 3912361, at *3–4 (D. Mass. Aug. 15, 2018); *Afridi v. Residential Credit Sols., Inc.*, 189 F. Supp. 3d 193, 200–01 (D. Mass. 2016).

7

The amended complaint identifies two infirmities with the affidavit filed in this case, the alleged effect of which is to strip Ocwen of standing to foreclose on the property. First, plaintiff points to Ocwen's failure to register the requisite power of attorney in the Land Court, in addition to recording it in the Registry of Deeds. Second, with respect to the power of attorney that was recorded in the Registry of Deeds, plaintiff objects to its "generic" nature, because the document gives a power of attorney to Ocwen, as an entity, instead of the specific employee of Ocwen, Shandra Liddell, who served as the company's § 35B affiant. The Court is not persuaded that either of these alleged defects, if they are in fact defects, prevents defendants from foreclosing on plaintiff's property.

Plaintiff's first claim arises out of the unique characteristics of the property in this case, which is both recorded and registered because the deed covers two parcels. The question is whether HSBC's failure to register a power of attorney in the Land Court, in addition to the power of attorney it recorded in the Registry of Deeds, renders any foreclosure on plaintiff's property a violation of the requirements of § 35B. Defendants contend that the statute is intended to protect innocent third-party purchasers, not a mortgagor such as plaintiff. They further contend that the power of attorney recorded in the Registry of Deeds for the county where the land lies accomplishes that goal, and therefore satisfies the statute, by providing sufficient notice to third parties. Plaintiff insists that the purpose of the statute is consumer protection, not the protection of third parties, and therefore the failure to register a power of attorney in the Land Court is fatal.

The issue, however, is not the purpose of the statute, but its actual language. In Massachusetts, "[i]t is a canon of statutory construction that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so

would achieve an illogical result." *Commonwealth v. Parent*, 465 Mass. 395, 409 (2013) (quoting *Welch v. Sudbury Youth Soccer Ass'n, Inc.*, 453 Mass. 352, 354-55 (2009)). Here, the statute itself, passed by a legislature fully aware of the existence of registered land in Massachusetts, requires only a recording in the Registry of Deeds, not a filing with the Land Court. And to the extent the purpose of the statutory scheme is taken into account, there is no obvious reason why the Court should add a new formality by imposing a dual requirement of recording and registration, where declining to do so would not achieve an illogical result.

The purpose of the land registration system is to "provide a means by which title to land may be made certain and indefeasible." *Deacy v. Berberian*, 182 Mass. 514, 519 (1962). The Land Court is a court of record with exclusive jurisdiction over complaints affecting title to registered land. Mass. Gen. Laws ch. 185, § 1. The governor appoints the Land Court recorder. Mass. Gen. Laws ch. 185, § 6. Registers of Deeds in each county act as assistant recorders who, under the supervision of the Land Court recorder, "have the same authority as the recorder to make memoranda affecting the title of such land, and to enter and issue new certificates of title, and to affix the seal of the court to such certificates and duplicate certificates of title." Mass. Gen. Laws ch. 185, § 10; *see also* MENDLER, MASSACHUSETTS CONVEYANCERS' HANDBOOK WITH FORMS § 8:3 (4th ed.) ("[E]ach registry of deeds has a 'registered land department,' more accurately called a registry district, and under M.G.L.A. c. 185, § 10, each register of deeds is an assistant recorder of the land court, charged with maintenance of a separate set of record books in which certificates of title are entered . . . .").

As the supervisory authority for the county registries, the Land Court issues guidelines "to offer a consistent, reliable set of requirements across the Commonwealth's registered districts." COMMONWEALTH OF MASSACHUSETTS, LAND COURT GUIDELINES ON REGISTERED

9

LAND, "Introduction" (Feb. 27, 2009). The Land Court revised those guidelines in 2009 in light of the wave of the "recent increase in foreclosures," in order to "eliminate the need for filing cases with the court unless such filings were absolutely necessary." *Id.* "[U]nder the revised Guidelines," the Land Court anticipated that "more decisions [would] be made at the registry district level, with the revised guidelines themselves affording sufficient guidance to the decision makers." *Id.*

In light of those statements and the statutory relationship between the Land Court and the Registry of Deeds, the Court is not inclined to read a dual registration and recording requirement into § 35B. Again, the statute explicitly requires recording with the Registry of Deeds in the county where the land lies, and is silent on the issue of Land Court registration. Defendants' power of attorney was recorded by an assistant recorder of the Land Court who has been given sufficient guidance by the Land Court and has much the same authority as the Land Court recorder. *See* Mass. Gen. Laws ch. 185, § 10; LAND COURT GUIDELINES ON REGISTERED LAND, "Introduction." The power of attorney that was recorded with the Registry of Deeds complied with the plain language of the statute and "provide[d] a means by which title to [plaintiff's] land may be made certain and indefeasible," consistent with the purpose of the statutory scheme. *See Deacy*, 182 Mass. at 519. The Court therefore cannot say that giving effect to the plain language of the statute has "achieve[d] an illogical result," or that it was "absolutely necessary" for defendants to also register the power of attorney with the Land Court. *See Commonwealth*, 465 Mass. at 409; LAND COURT GUIDELINES ON REGISTERED LAND, "Introduction." In short, the Court finds defendants complied with the requirements of § 35B.

Even if the Court were to find that the statute required defendants to register a power of attorney with the Land Court, it is not persuaded that the remedy plaintiff seeks—"[a]

10

declaratory judgment that the § 35B Affidavit is defective and that HSBC is not entitled to foreclose"—is appropriate. In analogous cases where courts in this district have been asked to hold that an error in a mortgage assignment stripped the servicer of standing to foreclose, they have declined to do so where the defect in question was merely a "scrivener's error," and there was evidence the assignment was otherwise valid—that is, the servicer was operating under an effective power of attorney. *See Weiner v. Rushmore Loan Mgmt. Servs., LLC*, 2018 WL 3912361, at 3-4 (D. Mass. Aug. 15, 2018) (upholding foreclosure sale despite mortgage assignment that referred to a power of attorney recorded in a different county registry of deeds because of evidence that there was a valid power of attorney recorded in the correct registry of deeds at the time the § 35B affidavits were signed and recorded); *Clockedile v. U.S. Bank Tr., N.A.*, 189 F. Supp. 3d 312, 315 (D. Mass. 2016) (upholding foreclosure sale despite mortgage assignment that referred to an expired power of attorney because of evidence the servicer was operating under a valid power of attorney, "albeit not the one that was referenced in the assignment document") (citing *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013)). Here, where there is evidence that Ocwen was operating under an effective power of attorney at the time Liddell certified compliance with § 35B, the failure to register an additional power of attorney in the Land Court should not strip defendants of standing to foreclose.

With respect to the second alleged defect, the Court does not find any infirmity, much less one that would void the foreclosure. Plaintiff objects to the fact that the recorded power of attorney defendants have produced is "generic" to Ocwen, and not specific to the Ocwen employee, Shandra Liddell, who served as the company's § 35B affiant. Defendants counter that "a corporation can only act through its employees," and proffer that "[a]s Ocwen's Contract

11

Mortgage Coordinator, Ms. Liddell was the individual identified by the company to certify that Defendants ha[d] complied with [§ 35B]." (Defs.' Mot. to Dismiss at 11-12).

It is true, of course, that a corporation can only act through its employees and agents. *Peterborough Oil Co. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 238 (D. Mass. 2005); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 172 (D. Mass. 2002) (quoting *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001)). The text of the power of attorney itself contemplates that obvious fact, appointing Ocwen as HSBC's "true and lawful *attorney*-in-fact," in the singular, and then switching to the plural to provide that "said *attorneys*-in-fact, *and each of them*, are hereby authorized, and empowered, as follows . . .." (Ex. A to Defs.' Mot. to Dismiss) (emphasis added). Indeed, the document itself is signed by Susie May, Vice President of HSBC, as an officer acting on behalf of a corporation. (*Id.*). The language of the statute also contemplates such practicalities of doing business, providing that the affidavit shall be completed by "the creditor, *or if the creditor is not a natural person, an officer or duly authorized agent of the creditor*." Mass. Gen. Laws ch. 244, § 35B (emphasis added).

In *Conrad v. Caliber Home Loans, Inc.*, 2017 WL 1496922, at *4 (D. Mass. Apr. 25, 2017), *reconsideration denied,* 2017 WL 2312686 (D. Mass. May 26, 2017), the court approved of a similar "Limited Powers of Attorney" document authorizing the mortgage servicer to complete the required § 35B affidavit. In *Conrad* and in this case, the servicers, *as entities*, were granted power of attorney, but both affidavits were subsequently completed by *employees* of that entity, without separately executed powers of attorney in the employee's name. *See* 2017 WL 1496922, at *4.

Accordingly, the Court finds the power of attorney appointing Ocwen as HSBC's attorney-in-fact was sufficient to authorize Liddell to complete the required § 35B affidavit, and

therefore that the second infirmity identified by plaintiff also fails to void the foreclosure sale.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: October 17, 2018                                      United States District Judge